# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELECTIONMALL, INC.,                    )
                                       )
                  Plaintiff,           )
                                       )
       v.                              )      No.   09 C 3151
                                       )
ROBERT STACEY ELLSWORTH,               )
                                       )
                  Defendant.           )

TEMPORARY RESTRAINING ORDER

ElectionMall, Inc. ("ElectionMall") has accompanied its

Complaint against Robert Stacey Ellsworth ("Ellsworth") with a

contemporaneously-filed Emergency Motion for Temporary

Restraining Order Ex Parte ("Motion").  Although ElectionMall's

counsel had not complied, before presentment of the Motion to

this Court, with the preconditions set out in Fed. R. Civ. P.

("Rule") 65(b)(1) to permit the issuance of a temporary

restraining order ("TRO") without notice to Ellsworth, that

omission has now been cured following this Court's identification

of those preconditions to ElectionMall's counsel.  That further

showing has confirmed the immediacy and irreparability of the

injury that would have resulted to ElectionMall before Ellsworth

could be heard in opposition (see Rule 65(b)(1)(A))--particularly

in light of the narrow scope of the relief sought in the Motion:

    1.  Based on the Complaint and the verified Motion,

    Ellsworth as ElectionMall's Chief Technical Officer had

    extensive knowledge of, and was privy to, confidential

information of ElectionMall, including source code, vendors,
business processes, strategic partners, architecture of the
software and other strategic privileged information.

2.   Development of ElectionMall's technology for its
customers employs a number of strategic partnerships,
vendors, business processes and trade secrets.

3.   Effective protection of those matters requires
ElectionMall to ascertain whether any such information has
been retained by Ellsworth after the termination of his
relationship with ElectionMall, or has been communicated to
others, or both.

In addition to the just-described irreparability of harm,
ElectionMall has no adequate remedy at law, its likelihood of
success on the merits is substantial, the balancing of harms
strongly favors ElectionMall (indeed, it would not appear that
any legitimate claim of harm from the limited TRO can be
sustained by Ellsworth) and the granting of the requested TRO
cannot disserve the public interest--in all those respects, see
the extensive discussion in Roland Mach. Co. v. Dresser Indus.,
Inc., 749 F.2d 380, 386-88 (7th Cir. 1984).

It is therefore ordered that Ellsworth, his agents,
servants, employees and attorneys and all persons who are in
active concert with him or any of the foregoing persons are
restrained until 11:40 a.m. June 12, 2009 (1) from revealing to

2

anyone else any confidential information relating to

ElectionMall, including but not limited to source code, vendors,

business processes, employees, strategic partners, architecture

or architecture of the software, (2) from disclosing any trade

secrets of ElectionMall or (3) from deleting or removing any

communication data or information from Ellsworth's computer

hardware or personal communication devices.  Because of the

absence of potential harm to Ellsworth from issuance of this TRO,

no bond or other security is required to be posted by

ElectionMall pursuant to Rule 65(c).  Finally, this action is set

for a status hearing at 9 a.m. July 10, 2009.

_____
Milton I. Shadur
Senior United States District Judge

Date:  May 29, 2009 at 11:40 a.m.

3

# EXHIBIT B

*HHW*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| __ELECTIONMALL, INC_____) | **09CV3151** | |
| ) | **JUDGE SHADUR** | |
| PLAINTIFF ) | **MAG.JUDGE ASHMAN** | |
| v. ) Nc | | |
| ) | | |
| __ROBERT STACEY ELLSWORTH___) | **F I L E D** | |
| ) | 5 - 26 - 2009 | |
| DEFENDANT ) | MAY 2 6 2009 | |

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

1. The Plaintiff, ElectionMall, Inc. is a Delaware Corporation with it corporate offices in Chicago, Illinois.

2. Defendant Robert Stacey Ellsworth, is a resident of the Commonwealth of Virginia.

## JURSDITION & VENUE

3. The district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different states." 28 U.S.C. § 1332(a)(1) (2006).

4. Section 9 of Exhibit 1 is an agreement between Plaintiff and Defendant agreeing to Venue and all federal claims will be brought in the Northern District of Illinois.

## CAUSE OF ACTION

5. Defendant Robert Stacey Ellsworth was employed at ElectionMall, Inc. as Chief technical Officer between the years 2007-2008 and is subject to Non-Discloser Agreement Exhibit 1 and an Employment Termination Agreement Exhibit 2.

6. During Defendants' employment he was privy to confidential information including source code, vendors, business processes, strategic partners, architecture of the software and other strategic privileged information.

7. Robert Stacey Ellsworth is now the Senior Technical Fellow at one of the National Parties.

8. Robert Stacey Ellsworth has breached his Non-Discloser Agreement and Employee Termination Agreement by divulging confidential information.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff prays that this court grant the following relief:

A. Money damages in the amount of Five Million Dollars, $5,000,000

B. Permanent injunction against the defendant using or acquiring source code, divulging business practices and processes from revealing vendors, architecture of the software, 3rd

party integrations and any other actions which may be necessary to protect
confidentiality, trade secrets, and intellectual property.

C. Any further relief which the court may deem appropriate.


Respectfully Submitted
/s/ Simer Singh
ElectionMall, Inc.
1101 Pennsylvania Ave. NW 6th Floor
Washington, DC 20004 USA
202-212-9825

# Exhibit 1

Bob        Ellsworth

Election Mall Technologies Inc.
NONDISCLOSURE AGREEMENT
**ElectionMall.com INC.**

In connection with a contemplated transaction or agreement by and between the undersigned and ElectionMall, Inc. (each a "Party," and collectively the "Parties"), the Parties have disclosed or may disclose information which has commercial and other value in their respective businesses and is confidential or proprietary in nature (including, without limitation, trade secrets, patents, patent applications, copyrights, know-how, processes, ideas, inventions (whether patent able or not), formulas, computer programs, databases, technical drawings, designs, algorithms, technology, circuits, layouts, designs, interfaces, materials, schematics, names and expertise of employees and consultants, any other technical, business, financial, customer and product development plans, supplier information, forecasts, strategies and other confidential information), all of which information shall be marked or otherwised designated as "confidential" or "proprietary," which to the extent previously, presently or subsequently disclosed is hereinafter referred to as the "Proprietary Information" of each Party.

In consideration of the Parties' discussions and any access each Party may have to Proprietary Information of the other, the Parties hereby agree as follows:

1.   Each Party agrees (a) to mark or otherwise designate any Proprietary Information prior to providing Proprietary Information to the Receiving Party as "Proprietary" or "Confidential" and prior to providing such information to seek and obtain the consent of the Receiving Party without which consent such information shall not be deemed to be Proprietary information, (b) to hold the Proprietary Information of the other Party in strict confidence and to take all precautions to protect such Proprietary Information as each Party employs with respect to its most confidential materials, but in no case shall the Party receiving such Proprietary Information (the "Receiving Party") employ less than commercially reasonable precautions, (c) not to disclose any such Proprietary Information or any information derived there from to any third person, except a Receiving Party's consultants or contractors who are bound at the time of disclosure by a non-disclosure agreement with terms at least as restrictive as the terms in this agreement, (d) not to make any use whatsoever at any time of such Proprietary Information except for the sole limited business purposes of evaluating the Proprietary Information internally to determine whether to enter into the contemplated transaction or agreement between the Parties, and (e) not to copy or reverse engineer, or attempt to derive the composition or underlying information, structure or ideas of any such Proprietary Information. Any employee given access to any such Proprietary Information must have a legitimate "need to know" and shall be similarly bound in writing by a non-disclosure agreement with terms at least as restrictive as the terms in this agreement. This agreement shall not be construed to limit either Party's right to develop independently or acquire products without the use of the other Party's Proprietary Information.

2.   Without granting any right or license, each Party agrees that clauses (a), (b), (c) and (d) of Section 1 above shall not apply with respect to any information that the Receiving Party can document (a) is or becomes (through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee thereof) generally available to the public, or (b) was properly in the Receiving Party's possession or properly known by the Receiving Party, without restriction, prior to receipt from the Party disclosing such Proprietary Information (the "Disclosing Party"), or (c) was rightfully disclosed to the Receiving Party by a third party without restriction. The Receiving Party may make disclosures required by court order provided the Receiving Party promptly notifies the Disclosing Party, uses its best efforts to limit disclosure and to obtain confidential treatment or a protective order and has allowed the Disclosing Party to participate in the proceeding.

3.   Each Party acknowledges and agrees that, as between the Parties, the Proprietary Information is and shall remain the sole and exclusive property of the Disclosing Party. Immediately upon (a) the decision by either Party not to enter into the contemplated transaction or agreement, or (b) a written request by the

Disclosing Party at any time (which will be effective when actually received or three days after mailed to the Receiving Party first class postage prepaid), the Receiving Party will immediately cease all use of and destroy or return to the Disclosing Party all Proprietary Information and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof. Each Party understands that nothing herein (i) requires the disclosure of any Proprietary Information of the other Party, which shall be disclosed, if at all, solely at the option of the other Party, or (ii) requires either Party to negotiate or proceed with any contemplated transaction or agreement in connection with which Proprietary Information may be disclosed.

4.    Each Party represents and warrants that such Party's performance of and compliance with this agreement will not result in any violation, or be in conflict with or constitute a default under any of the terms, conditions or provisions of any material document, agreement or other instrument executed by such Party or by which such Party is bound.

5.    Except to the extent required by law, the Parties shall not disclose the existence or subject matter of the negotiations or business relationship contemplated by this agreement.

6.    The failure of any Party to perform or comply with its obligations hereunder will constitute a breach of this agreement by such Party.

7.    Each Party acknowledges and agrees that due to the unique nature of the Proprietary Information, there can be no adequate remedy at law for any breach of the Parties' obligations hereunder, that any such breach or any unauthorized use or release of any Proprietary Information by the Receiving Party will allow the Receiving Party or third parties to unfairly compete with the Disclosing Party resulting in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to appropriate equitable relief in addition to whatever remedies it might have at law and to be indemnified by the Receiving Party from any loss or harm, including, without limitation, attorneys' fees, in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Proprietary Information. Each Party will notify the other in writing immediately upon the occurrence of any such unauthorized release or other breach by such Party of which it is aware and shall immediately take reasonable actions to correct such unauthorized release or breach.

8.    This Agreement shall be governed by the laws of the State of Illinois without regard to the conflicts of law provisions thereof. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect. This Agreement supersedes all prior discussions and writings and constitutes the entire agreement between the Parties with respect to the subject matter hereof. The prevailing Party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees. No waiver or modification of this Agreement will be binding upon either Party unless made in writing and signed by a duly authorized representative of such Party and no failure or delay in enforcing any right will be deemed a waiver.

9.    Each Party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in the United States District Court for the Northern District of Illinois or in the state courts of the State of Illinois and irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in personam, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party; provided, however, that this Section shall not prevent a Party against whom any legal action, suit or proceeding is brought by the other Party in the state courts of the State of Illinois from seeking to remove such legal action, suit or proceeding, pursuant to applicable Federal Law, to the district court of the United States for the district and division embracing the place where the action is pending in the state courts of the State of Illinois, and in the event an action is so removed each Party irrevocably accepts and submits to the

jurisdiction of the aforesaid district court. Each Party hereto further irrevocably consents to the service of process from any of the aforesaid courts by mailing copies thereof by registered or certified mail, postage prepaid, to such Party at its address designated pursuant to this Agreement, with such service of process to become effective 30 days after such mailing.

10. The obligations contained herein shall continue for five (5) years after the date of disclosure of any Proprietary Information.

11. Each

ACKNOWLEDGED AND AGREED:

Date: _Aus 15 2007_

By (Signature): _R+SEl_

_Robert S Ellsworth_
Printed Name

_____
Title

Address: _32D Ellicott Ct_
_____ville, VA 201__

Date: _AUG 15___

By (Signature): _____

RAVNEET SINGH
Printed Name

CEO/ Founder
Title
Address:
30 South Wacker Drive
Suite 2200
Chicago, Illinois, USA
60606

Legal Counsel
FRANK C. NICHOLAS
CARDINAL LAW GROUP
1603 ORRINGTON AVENUE, SUITE 2000
EVANSTON, ILLINOIS 60201-5043
(847) 905-7111

# Exhibit 2

**ElectionMall Technology, Inc.**
**Termination Agreement**

This letter confirms the arrangements we have agreed upon in connection with your termination from employment with ElectionMall Technology, Inc. ("The Company"), as of.

1.    **Separation Date**

Your separation date is February 29, 2008 ("Separation Date").

2.    **Separation Payments**

The Company will pay you through February 29, 2008 . You will be paid at your regular pay rate, less appropriate deductions.  You will also be paid for all expenses as outlined below.

Your right to receive the separation payments and expense payments is conditioned upon your signing below and releasing of all claims as set forth below. After this document is signed, you will receive your check on the regularly scheduled payday.

3.    **Employee Benefits [please review this clause and see if it coincides with our benefits; otherwise, please omit]**

(a) **Life Insurance and Long Term Disability (LTD)** coverage will cease as of your Separation Date.  You may convert your group life and/or group LTD coverage to an individual policy.  Information concerning conversion is available upon request.

(b) **Medical and Dental plans:** Enrollment in these plans may continue through the end of the month under this agreement.  You may be eligible for coverage via Cobra.

(c) **Paid Time Off (PTO) Pay:** Our records show that because you have been here less than six months, you are not vested in any accrued PTO hours.

1

## 4.    References

Upon request from perspective employers, we will only confirm your dates of employment and description of the range of your responsibilities.

## 5.    Confidential Information

You acknowledge that in your employment with The Company, you had access to certain information that is confidential and proprietary to The Company, including, but **not limited** to computer software source code or other technical product descriptions, customer or vendor lists, marketing analyses, or any other key product, business or financial data. **You agree to maintain such information in confidence and refrain from using it or disclosing it in furtherance of your own business or for the benefit of third parties.**

You further agree that you will return the originals and copies of any of The Companies reports, records and confidential information in your possession, including information that is in electronic media form.

## 6. Non-Compete  (Refer to Employment Contract and NDA)

## 7. Derogatory Communications

You further agree that you will not engage in conduct or make statements relating to your employment or this Termination Agreement that can be construed as critical or derogatory of the Company, its employees, agents, partners, shareholders, officers, directors, and affiliated companies.
You further agree to immediately cease all communication with employees, clients,        and        business        affiliates        of        the        Company.

## 8.    Company Documents and Equipment

You agree to return all company property in your possession to Savina Singh, VP of Operations including, software, documents and any other Company equipment or property that you have.

You also agree to surrender to the Company paper and electronic copies of all letters, memoranda, documents, records, and other material that is the property of the Company.

## 9.    Expense Reports

2

We request that you promptly submit any outstanding expense reports so that we can process them.

10.    **Release**

Your payment of separation payments and expense payments as outlined above is conditioned on your entering into the following release:

(i)    Your acceptance of these arrangements shall constitute a complete release and discharge of any and all rights, claims, demands and causes of action which you have or could assert against the Company specifically including age discrimination claims which you may have under the Age Discrimination in Employment Act of 1967 (ADEA), Title VII of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, national origin, religion or sex, the Equal Pay Act, which prohibits paying men and women unequal pay for equal work, the Americans with Disabilities Act, which prohibits discrimination based on disability, the Maryland Fair Employment Practices Act, Older Worker's Benefit Protection Act or any other federal, state or local common law, statute, regulation or law of any other type.

(ii)    This release does not extend to amounts to which you are entitled under Company benefit plans, claims against the Company which may arise after this waiver is executed, or reimbursement of expenses under expense reports.

(iii)    You are executing this release voluntarily after having been given the opportunity to study and negotiate the provisions of your Agreement. You further acknowledge that the legal consequences of executing this release have been explained to you and that you understand these consequences.

(iv)    The consideration for this release is our promise to provide you with separation pay and other employee benefits, as outlined in paragraphs 2 and 3 above.

(v)    Before signing, you should carefully review all provisions of this letter, and advise us if you have any questions or difficulties. You may wish to consult with an attorney before signing this waiver and release.

(vi)    You agree you have entered into this Agreement voluntarily, with full knowledge and understanding of its terms and that it constitutes a binding agreement releasing the Company from all claims arising out of your employment and separation from employment.

If any section, paragraph, clause or provision of this letter shall be held invalid,

3

the invalidly thereof shall not affect any of the other provisions of this letter.

You and the Company further agree that in the event of any breach of this Termination Contract or default hereunder, the injured party has the right to pursue any legal action available to enjoin the breaching party from further injurious conduct and/or to recover from the breaching party damages for such breach or default.

After you have completed all review and consultation concerning this proposed Agreement, if you wish to accept, please sign and date two copies of this letter in the space provided below, acknowledging your acceptance of this Agreement.

Sincerely,

Ravi Singh
President and Founder

I have read, understand, and agree to be bound by the above terms and provisions related to the termination of my employment.

3/18/08
_____
                Date

4

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

```
                              )
___ELECTIONMALL, INC_____)
                              )
       PLAINTIFF              )
   v.                         )   No. ___09c3151_____
                              )
___ROBERT STACEY ELLSWORTH___)
                              )
                              )
       DEFENDANT              )
```

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER EX PARTE

1. ElectionMall,Inc. is asking for a Motion for a Temporary Injunction against Defendant Robert Stacey Ellsworth from revealing any confidential information or disclosing any Trade secrets.

2. ElectionMall, Inc. Is a software company that has created on demand technology for the vertical of campaigns and elections. To develop such technology there are a number of strategic partnerships, vendors, business process and trade secrets employed.

3. Robert Stacey Ellsworth is the former Chief Technical Officer for EleectionMall, Inc. and had extensive knowledge and was privy to confidential information including source code/ vendors, business processes, strategic partners, architecture of the software and other strategic privileged information.

4. Robert Ellsworth in his current position as Senior Technical Fellow to one of the National Political Parties has disclosed confidential information about the trade secrets of the Plaintiff.

5. The injunction is to prevent any further divulgence of confidential information that would jeopardize the trade secrets of the Plaintiff.

6. Plaintiff, is confident in the Merits of its Case and would suffer irreparable harm if this Emergency Injunction is not granted.

7. There is no adequate remedy at law that could wholly compensate the Plaintiff.

8. The burden of hardship on the defendant is small. As it is simple prayer to the court to prevent any more harm on the Plaintiff and to protect its Trade Secrets

9. The burden being so small the need for a bond does not seem necessary but will be given if required by the court.


Respectfully Submitted

/s/ Simer Singh

ElectionMall, Inc.

1101 Pennsylvania Ave. NW 6th Floor

Washington, DC 20004 USA

202-212-9825

## VERIFICATION

Simerneet Singh, being first duly sworn, on oath states that the facts in the alleged in the foregoing Motion for the Temporary Restraining Order are True.

Simerneet Singh

Subscribed and Sworn to before me this May 27th, 2009

NILESH · M · SHAH

Notary Public

OFFICIAL SEAL
NILESH M. SHAH
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires May 24, 2011